TOWN OF BARTLETT, a Municipal Corporation, Complainant-Appellant, v. A. E. BEATY, SR., Durrell Shelton, and John Will McCreight, Commissioners Comprising the Ellendale Utility District, Elmore Park Meadows, Inc., a Tennessee Corporation, and Quinton Olds, Defendants-Appellees.—440 S.W.2d 831.

Western Section. June 29, 1967.

Rehearing Denied September 18, 1967.

Certiorari Denied by Supreme Court January 15, 1968.

408

Laughlin, Watson, Garthright & Halle, Memphis, for complainant-appellant.

Winchester, Goff, Winchester & Walsh, McCloy, Wellford & Clark, Memphis, for defendants-appellees.

CARNEY, J. The complainant, Town of Bartlett, Shelby County, Tennessee, has appealed from a decree of the Chancery Court of Shelby County dismissing its

original bill for injunctive relief against the defendant, Ellendale Utility District. It was and is the contention of the Town of Bartlett that under and by virtue of T.C.A. Section 6-2608 the Town of Bartlett has a right superior to that of the defendant Ellendale Utility District to furnish water to the Elmore Park Meadows, Inc. subdivision and to the residents thereof. The defendant, Quinton Olds, is the principal owner-developer of a 70-acre real estate subdivision located near the limits of the Town of Bartlett. The subdivision is incorporated under the name of Elmore Park Meadows, Inc. and Mr. Olds is president.

When complainant's original bill was filed on June 4, 1964, the defendants, Quinton Olds and Elmore Park Meadows, Inc., had entered into a written contract with the Ellendale Utility District to obtain water for the subdivision and the respective houses as they were built in the subdivision. The main lines had been constructed and the water turned on when the bill was filed. At the time of the trial below in May, 1966, there had been some forty houses hooked up and using water furnished by Ellendale Utility District. Many other houses had been built but had not been occupied and hence were not then using water. The Chancellor held that the Town of Bartlett had waived its prior right to furnish water to the subdivision and dismissed the original bill.

The 70 acres of land comprising the Elmore Park Meadows, Inc. subdivision is located in the eastern part of Shelby County less than three miles from the limits of the Town of Bartlett and less than five miles from the city limits of Memphis, Tennessee, and outside but near the limits of the Ellendale Utility District. The exact distance is not shown. However, the proof does show that

Ellendale Utility District furnished water to property owners adjoining at least one side of the subdivision and the Town of Bartlett furnished water to property owners on one or more sides of the subdivision. The subdivision was being developed in three sections, A, B, and C. Section A was to be developed first and the Town of Bartlett had main lines closer to Section A than did the defendant Ellendale Utility District. The entire subdivision will have about 200 building lots. However, Ellendale Utility District had main lines closer to Sections B and C than did the Town of Bartlett.

T.C.A. Section 6-2608 provides in part as follows:

"Incorporated cities and towns having a population of 5,000 or over shall have the prior right as respects utility districts to extend water, sewer or other utilities in any territory within five (5) miles of their corporate limits; where an incorporated city or town has a population of less than five thousand (5,000), the limit shall be three (3) miles; provided, that this provision shall not apply within the boundaries of a utility district or to facilities heretofore extended by a utility district beyond its boundaries; and provided, further, that a utility district may extend water, sewer or other utility facilities into such an area through agreement with the city or town concerned. A city or town shall lose its prior right under the following conditions: (1) where an agreement cannot be reached, the utility district, by a resolution setting out the area to be served and the type of utility, shall notify the city or town of its intention to serve the area; (2) after receipt of such notice, the city or town shall have sixty (60) days in which to adopt an appropriate ordinance or resolution determining to serve the area within a specified

time; the utility district may within ten (10) days appeal to the county judge or chairman of the county court of the county in which the major part of the land area is located if it considers the time so determined is too long, whereupon the county judge or chairman after hearing both parties shall determine a reasonable time for the city or town to provide the services, and further appeal may be taken by either party as provided in sec. 6-2606 and (3) upon failure of the city or town to provide the services within the time so determined, the utility district shall be authorized to serve any part of the area not already served by the city or town.''

The Town of Bartlett had less than 5,000 inhabitants but Elmore Park Meadows, Inc. was located less than three miles from the city limits of Bartlett. Therefore, it would appear that under T.C.A. Section 6-2608 the City of Memphis and thus the Memphis Light, Gas & Water Division had the first right to furnish water to the Elmore Park Meadows, Inc. subdivision. The Town of Bartlett had the second right to furnish water to said subdivision. The Ellendale Utility District had the right to furnish the water only in the event the Memphis Light, Gas & Water Division and the Town of Bartlett both elected not to furnish said water services.

Sometime about January 1, 1964, the defendant, Quinton P. Olds, president of Elmore Park Meadows, Inc., discussed with D. J. Guillory, who was then the Mayor of the Town of Bartlett, the matter of obtaining water from the Town of Bartlett for his subdivision. Mayor Guillory advised Mr. Olds that he could have water on identical terms as given other developers in the area outside the corporate limits of Bartlett. Most of these

agreements required the developer to put up a substantial amount of money called "front end money." In the course of several conversations between Mr. Olds and Mayor Guillory, Mr. Olds told Mayor Guillory that he planned also to negotiate with the Memphis Light, Gas & Water Division and the Ellendale Utility District for water service and that he was going to take the best deal offered.

In 1955 there had been a dispute between the Town of Bartlett and the Ellendale Utility District as to the area to be served by each. On September 30, 1955 the Ellendale Utility District and the Town of Bartlett had entered into a written agreement designating a particular line as the boundary of the respective areas to be served by the Town of Bartlett and the Ellendale Utility District. The 70-acre Elmore Park Meadows, Inc. subdivision is within the area to be served by the Town of Bartlett under the written agreement of date September 30, 1955, with the Ellendale Utility District.

On January 27, 1964, Mr. James W. Watson, attorney for the Town of Bartlett, wrote a letter to the Board of Commissioners of the Ellendale Utility District advising them in substance that information had come that the Ellendale Utility District was probably preparing to extend its water lines over into the area which the Town of Bartlett expected to serve and advising the Board of Commissioners that the Town of Bartlett claimed the right to serve this area both under the written agreement of date September 30, 1955, and under the provisions of T.C.A. Section 6-2608. Mr. Watson received no reply to this letter.

On or about February 14, 1964, Mayor Guillory received from an engineering firm in Memphis a written

estimate of the cost of extending the water mains of the Town of Bartlett to Section A of the proposed Elmore Park Meadows subdivision. Mayor Guillory verbally reported this estimate of $29,000 to Mr. Olds and suggested that Mr. Olds should put up the entire amount as front end money as the other developers had done. Mr. Olds protested that it was too much front end money.

Mr. Olds talked to the Memphis Light, Gas & Water Division. The best offer he could obtain from that agency was a total cost of $100,000 for the entire 200 lot area. Instead of front end money Mr. Olds would have to give a bond in said amount which would be discharged at the rate of approximately $200 per lot as the lots were sold and new owners tapped on the main lines. Mr. Olds felt that this was too high. He then began negotiating with the Ellendale Utility Company to furnish water to his subdivision.

On March 2, 1964, Mr. Olds, as president of Elmore Park Meadows, Inc., entered into a written agreement with the Ellendale Utility District whereby the Ellendale Utility District agreed to furnish Elmore Park Meadows, Inc. subdivision water without any front end money being paid by the developer, Mr. Olds. The only requirement of Mr. Olds was that he pay $122.50 per month, this amount to be reduced at the rate of $3.50 as each new homeowner tapped on the main line for water service. On the completion of Section B, Mr. Olds was to pay $70.00 per month to be reduced at $3.50 per month as each new homeowner tapped on the main line. Upon completion of the water mains in Section C, Mr. Olds was to pay $35.00 per month to be reduced at $3.50 per month as each new homeowner tapped on the main line.

No notice was given by Mr. Olds nor by the Ellendale Utility District of this agreement of date March 2, 1964.

During the period from January, 1964, until June, 1964, work was being performed on the subdivision grounds; roads, curbs and gutters were being laid. Mr. Warner, the superintendent of the water department of the Town of Bartlett, who was a personal friend of Mr. Olds, talked with Mr. Olds several times about the Town of Bartlett supplying water to the subdivision. During this period of time Mr. Olds informed Mr. Warner that he had three sources of water and that he had not decided on a particular source. In April, 1964, he did tell Mr. Warner that "You are too late. I have already obtained a contract for my water supply."

Mr. Warner saw some fire plugs and other equipment with the name of Ellendale Utility District on them and suspected that Mr. Olds had made a contract with Ellendale Utility District. He reported this fact to Mr. Wilson, the city attorney. On April 21, 1964, Mr. Watson called Mr. A. E. Beaty, Jr., superintendent of the Ellendale Utility District, told him about the report he had obtained about the fire hydrants and possibly other equipment at or near the site of the subdivision. He asked him the direct question if the Ellendale Utility District proposed to furnish water to the subdivision. He was unequivocally assured by Mr. Beaty that the District did not intend to furnish water for the subdivision. Mr. Beaty, Jr. did admit that he had talked to Mr. Olds but said he had reached no understanding with him. He further told Mr. Watson that probably Mr. Olds intended to drill his own well.

Mr. Watson relied upon these assurances of Mr. Beaty and advised Mr. Warner that the Town of Bartlett had

nothing to worry about from Ellendale Utility District. About May 15, 1964, Ellendale Utility District began work laying the principal water mains in the subdivision and completed the work about June 1, 1964. When the Town of Bartlett and Mr. Watson, city attorney, learned that they had been deceived by Ellendale Utility District, they filed a suit on June 4, 1964, seeking to enjoin the Ellendale Utility District from furnishing water to the subdivision property. At this time no new homes had been built in the subdivision. None of the houses were connected with water until August, 1965.

The application for temporary injunction was denied and the complainant was directed to tender a form of contract which the complainant would be willing to enter into with the defendant, Elmore Park Meadows, Inc. This proposed contract was filed as an exhibit to the amended bill. Trial upon the merits was held on oral testimony before the Chancellor beginning on May 24, 1966.

It was admitted that the Ellendale Utility District never made any attempt to comply with the provisions of T.C.A. Section 53-2002 which requires that no new construction of water works or extensions of systems shall be done until the plans for such construction or change have been submitted to and approved by the Tennessee Department of Public Health. T.C.A. Section 53-2007 makes it a misdemeanor to violate the provision of Section 53-2002 and other sections punishable by a fine of not less than $10.00 nor more than $100.00 for each violation.

The Tennessee Department of Public Health, though notified of the violation, has made no effort to enforce

the penalty nor to exercise any other sanctions upon the Ellendale Utility District. The proof is uncontradicted that the quality of the water furnished to the Elmore Park Meadows, Inc. subdivision tests above 90 as does the water furnished by the Town of Bartlett and the Memphis Light, Gas & Water Division. The Chancellor found that the alleged violation of T.C.A. Section 53-2002 has not been detrimental to any of the parties in the litigation nor to the inhabitants of the subdivision and that if anybody should complain it should be the Tennessee Department of Public Health. We agree that the violation of said section is not a ground for injunctive relief in behalf of the complainant and assignment of error No. III is overruled.

Upon the hearing below the complainant rejected any suggestion by the Chancellor that the complainant might accept the use of the existing water system installed by Ellendale Utility District or enter into a contract for the purchase of the same primarily upon the ground that it was installed in violation of T.C.A. Section 53-2002 and that the complainant was unwilling to assume the liabilities which might ensue from faulty installation. There was no proof of actual faulty installation.

The Chancellor found that the situation developed as a result of the invitation by Mayor Guillory to Mr. Olds that he make the best deal possible for water from Memphis or Ellendale or any other source available and that the Town of Bartlett did not come into the court with clean hands in connection with the very matter upon which it based its claim for relief. He further found that if the injunctive relief should be granted to the Town of Bartlett as prayed, the present water system would have to be removed and a new system installed; that this

would result not only in additional expense but great inconvenience to residents of Elmore Park Meadows, Inc.; and that the effect of this would be to ruin the development of the subdivision. Accordingly, the Chancellor dismissed the original bill at the cost of the complainant reciting in his memorandum opinion that it was the only relief sought.

Assignment of error No. I complains of the failure of the Chancellor to decide expressly the right of priority of the Town of Bartlett over the defendant Ellendale Utility District to serve the Elmore Park Meadows, Inc. subdivision under T.C.A. Section 6-2608. We think it implicit in the Chancellor's memorandum that he was of opinion that the complainant did have a right prior to that of the Ellendale Utility District to furnish water to the area. We hold that under T.C.A. Section 6-2608 and the holding of the court in Chandler Investment Co. v. Whitehaven Utility District, 1957, 44 Tenn.App. 1, 311 S.W.2d 603, that the complainant Town of Bartlett did have a right to serve the area with water prior to that of the Ellendale Utility District. The assignment of error is overruled only for the reason that we think that the Chancellor has construed T.C.A. Section 6-2608 as contended by appellant.

Assignment of error No. II insists that His Honor the Chancellor was in error in finding that the complainant came into court with unclean hands. We think this assignment of error is well taken and must be sustained. It is the Ellendale Utility District which comes into court with unclean hands. Mr. Beaty, Jr., the manager of Ellendale Utility District, admitted in open court that he received the letter from Mr. Watson, the city attorney for the Town of Bartlett, of date January 27, 1964,

advising the Utility District that the Town of Bartlett was claiming the right to serve the area covered by the Elmore Park Meadows, Inc. subdivision both under the authority of the written agreement between the Town of Bartlett and the Ellendale Utility District of date September 30, 1955, and also under the authority of T.C.A. Section 6-2608. Mr. Beaty further admitted that he made no response whatsoever to this letter. He further admitted he entered into negotiations with Mr. Olds to furnish water in the very area referred to in the letter of Mr. Watson with enthusiasm and that he gave no notice to Mr. Watson or the Town of Bartlett of his negotiations with Mr. Olds.

Further, Mr. Beaty, Jr. admitted in open court that he deliberately lied to Mr. Watson on April 21, 1964, when Mr. Watson asked him on the telephone if the Utility District was preparing to furnish water to Mr. Olds' subdivision. He implemented the falsehood by suggesting that probably Mr. Olds was going to dig his own well and furnish his own water. Unashamedly he testified that he told this lie in order to gain time in which to get the water mains of the Ellendale Utility District down in the subdivision and thus present a "fait accompli" before the officials of the Town of Bartlett learned of his perfidy. Except for his falsehood Mr. Watson could have obtained injunctive relief before the water mains were laid and rights of innocent persons intervened.

A grosser fraud we cannot imagine unless it was the fraud practiced by Jacob upon his blind father Issac when he obtained the birthright of his brother Esau. There is no proof that any official of the Town of Bartlett, including its attorney, Mr. Watson, the Mayor, Mr. Guillory, or the water superintendent, Mr. Warner, ever

misstated any fact or misled any of the parties in this litigation to his or their prejudice or that any of them ever acted in the premises in any manner except in a forthright manner. Mayor Guillory at all times indicated to Mr. Olds that his municipality wanted to furnish the water to the subdivision. The water superintendent, Mr. Warner, made repeated visits to Mr. Olds over on the subdivision property inquiring about the chances of the Town of Bartlett to furnish water to the subdivision. When Mr. Olds made application with the Memphis Light, Gas & Water Division to obtain sewerage service for the subdivision the application recited that the water would be furnished by the Town of Bartlett. Somewhere along the line the application was changed to recite that the water would be furnished by the Ellendale Utility District. Mr. Olds acquiesced if he did not collaborate with Mr. Beaty in keeping secret from the Town of Bartlett that the Ellendale Utility District would furnish the water for the subdivision. The evidence preponderates against the finding of the Chancellor that the complainant Town of Bartlett came into court with unclean hands.

Assignment of error No. IV insists that the Chansellor was in error in finding that the subdivision area was "a no-man's land which Memphis, Bartlett and Ellendale might invade." As set out above we find that the right of priority was controlled by T.C.A. Section 6-2608 quoted hereinabove and that the priorities under such section were as follows: (1) Memphis Light, Gas & Water Division had the first opportunity to serve water to each area; (2) the Town of Bartlett had the second right to serve the area in the event the Light, Gas & Water Division did not see fit to do so; (3) The Ellendale Utility District had a right to serve it only in the event

the Memphis Light, Gas & Water Division and the Town of Bartlett did not desire to serve said area or in the alternative lost the right to serve said area as above set out. Therefore, assignment of error No. IV is sustained.

Assignment of error No. V insists that the Chancellor erred in finding that the Town of Bartlett seeks to "ruin the development of the subdivision." This allegation is not quite accurate. What the Chancellor did find was that the effect of the injunction sought by the Town of Bartlett would be to ruin the development of the subdivision. There were some forty-odd houses already occupied in the subdivision and the owners had tapped on the Ellendale Utility District water lines at the time of the trial below on the merits. These homeowners had paid approximately $200 each to tap on the line. To grant the injunction prayed for by the Town of Bartlett would have worked hardship on these innocent homeowners unless the relief granted to the complainant should be couched in such language as to protect the rights of such homeowners. Therefore, assignment of error No. V is overruled.

Assignment of error No. VII insists that the Chancellor erred in finding that though Ellendale had been put on notice of the Town of Bartlett's claim that Mr. Olds, the developer, had not. Mr. Olds was an experienced developer of subdivisions having been in the business since 1948. We understand the Chancellor's finding to be that Mr. Olds did not have actual knowledge from any official of the Town of Bartlett that Bartlett was insisting that Mr. Olds could not buy from Ellendale unless the Town of Bartlett was willing to forego its prior right under T.C.A. Section 6-2608. Mayor Guillory admitted that he never told Mr. Olds that he could not buy from

Ellendale. Therefore, we must overrule assignment of error No. VII.

Assignment of error No. VIII insists that the Chancellor erred in finding that the Town of Bartlett was ready to "haggle or trade rather than tender a bona fide offer to supply water." Mr. Olds testified that Mr. Guillory, the then Mayor, called him and asked him to get his lowest figure from other sources and bring them to him and he would submit them to the Board. Mr. Olds said he refused to do this. This testimony was not denied by Mr. Guillory.

We find that Mayor Guillory made a bona fide offer to Mr. Olds for the Town of Bartlett to furnish water for Section A of the subdivision for $29,000; that this offer was made orally and Mr. Olds rejected it because he was required to put up the money "front end;" and we also find that Mr. Guillory later asked Mr. Olds to report to him any better offer which he had received from the other two available sources of water, namely Memphis Light, Gas & Water Division or Ellendale Utility District, and that Mr. Olds refused to do so but asked for another offer from Bartlett. We find further that the conversations between Mr. Guillory and Mr. Olds were had in the light of the prior right of the Memphis Light, Gas & Water Division to furnish water to the subdivision and that Mr. Guillory really never seriously considered that Ellendale would furnish the water because he knew that the Town of Bartlett and Ellendale had a written contract which gave the Town of Bartlett the exclusive right to furnish water to this particular area as against Ellendale.

We find that at no time did the Town of Bartlett intend to waive its right to furnish water to the subdivision in

favor of the Ellendale Utility District. However, it does appear that Mayor Guillory as the spokesman for the Town of Bartlett in the premises did fail to impress upon Mr. Olds the fact that the Town of Bartlett claimed a prior right over Ellendale to furnish the district and did acquiesce in the actions of Mr. Olds in dealing with the other two sources of water. We think the Town of Bartlett should be estopped to assert its right of priority to furnish water over Ellendale Utility District to the detriment of Mr. Olds insofar as Section A of the subdivision is concerned. Of course, Mr. Olds was charged with constructive notice of the provisions of T.C.A. Section 6-2608 and the decision of this court in Chandler Investment Co. v. Whitehaven Utility District, supra; Assignment of error No. VIII is therefore respectfully overruled.

■ Assignment of error No. VI insists that His Honor the Chancellor erred in failing to apply Section 6-2608 to Sections B and C of the Elmore Park Meadows, Inc. subdivision which had not been developed as of the date of the trial and to which Ellendale Utility District had not extended its water mains. It is the insistence that the Town of Bartlett was entitled under Section 6-2608 to serve these two areas because no innocent persons or homeowners would be involved and that Mr. Olds was chargeable at least with constructive knowledge that the Town of Bartlett had the prior right to furnish water to the subdivision. We think His Honor the Chancellor was in error in refusing to enjoin the Ellendale Utility District from extending its water mains into Sections B and C of the subdivision. Assignment of error No. VI is therefore sustained.

The decree of the Chancellor below will be modified insofar as it relates to the service of water to Sections B and C of Elmore Park Meadows, Inc. and the cause will be remanded to the Chancery Court of Shelby County for issuance of an injunction restraining Ellendale Utility District from furnishing water to Sections B and C of the subdivision if interests of innocent home-owners or other persons have not intervened. The officials of Elmore Park Meadows, Inc. shall be required to negotiate and deal directly with the Town of Bartlett under the authority of T.C.A. Section 6-2608 regarding a source of water for said two sections of the subdivision.

If the Town of Bartlett is now interested in acquiring the water mains which Ellendale Utility District has placed in Section A of the subdivision, this court feels that such relief could be granted under complainant's prayer for general relief and under the maxim that equity likes to do complete justice. This court will look with favor upon a request by complainant Town of Bartlett for a decree to accomplish said purpose. Of course, provision must be made in any such decree that the rights of the bond holders who furnished the money to Ellendale Utility District for the laying of the water mains are protected.

The order of remand will provide that the bill of complainant Town of Bartlett for the injunction insofar as it applies to furnishing water to Section A is dismissed without prejudice to the Town of Bartlett to amend its bill upon the remand so as to make claim against the Commissioners of the defendant Ellendale Utility District and/or A. E. Beaty, Jr. for actual and/or punitive damages and such other relief as the Town of Bartlett may reasonably believe it is entitled to under this opinion

because of the fraud perpetrated upon it. Chancery having taken jurisdiction for one purpose, will take jurisdiction for all. Gibson's Suits in Chancery, 5th Edition, Vol. 1, Section 45, pages 56 and 57.

The costs in the court below and in this court are taxed against defendant Ellendale Utility District. T.C.A. Section 20-1621.

Avery, P. J. (W.S.), and Bejach, J.. concur.

## SUPPLEMENTAL OPINION

On June 29, 1967, this Court announced an opinion in the above styled cause modifying the decree of the Court below and remanding the cause for further proceedings consistent therewith. On July 10, 1967, solicitor for appellees, Quinton Olds and Elmore Park Meadows, Inc., filed a "Petition for Clarification of Decree and Opinion and/or a Petition for Rehearing * * *" The petition recited that solicitor for appellees was in the midst of vacation and that within a short time would submit affidavit of appellee Quinton Olds, the real estate developer, in support of the petition. The affidavit was filed in this Court on July 28, 1967.

Town of Bartlett has filed a reply to the petition. In the first paragraph the Town of Bartlett suggests that the petition should be stricken because it was filed more than ten days after the announcement of our opinion. In so far as the petition is to be considered as a petition to rehear the motion to strike will be sustained because the motion was not filed within the ten day period provided by Rule 22 of this Court. In so far as the petition requests a clarification of our former opinion the motion to strike will be overruled. We think solicitors for all

parties and also the Court below should have the benefit of any clarification which we can make.

Appellees Elmore Park Meadows, Inc. and Quinton Olds, the developer, insist that after a favorable decision by the Court below and pending this appeal the appellees proceeded with final plans for development of Section B and C of Elmore Park Meadows Subdivision including "(1) placing of contracts with City of Memphis and Shelby County for utility service including sewage and excluding water service; (2) contract with Gay-Michie Company for grading, curbs, gutters, drainage, etc.; (3) arrangement for loan of $140,000 at the Peoples Bank in Shelby County for additional funds with which to complete the subdivision; (4) sale of some fifteen lots to Chester Marbury Construction Company." Appellee Olds makes oath that all of these transactions were done by him in anticipation of water service being furnished by Ellendale Utility District. Apparently no homes have been built in Sections B and C of the subdivision. Appellee Olds was chargeable with knowledge that the decision of the Chancellor below was vacated by appeal and that this cause came to this Court for hearing de novo on appeal by the Town of Bartlett. Therefore, it appears to this Court that neither Mr. Olds nor any of the persons with whom he has contracted are in the position of innocent purchasers requiring any modification of our former opinion. It also appears that these contracts can be completed irrespective of the ultimate supplier of water service to Sections B and C.

In our opinion of date June 29, 1967, we ruled that under T.C.A. Section 6-2608 the City of Memphis had the first right to furnish water to Elmore Park Meadows, Inc. and the Town of Bartlett had the second right to

furnish water to said subdivision and that the Ellendale Utility District had the right to furnish the water only in the event the City of Memphis and the Town of Bartlett both elected not to furnish said water services. So far as it appears in this record the City of Memphis is not now claiming any rights superior to the Town of Bartlett to furnish water to Elmore Park Subdivision. Our statement that the City of Memphis had the first and prior right to furnish water to the subdivision was inadvertent and only obiter dicta.

Our opinion of date June 29, 1967, will be modified so as to reaffirm our holding that under T.C.A. Section 6-2608 the Ellendale Utility District had the right to furnish the water to Elmore Park Meadows, Inc. Subdivision only in the event the City of Memphis and the Town of Bartlett both elected not to furnish said water services. We make no adjudication as to the right of Memphis over Bartlett to furnish water to Elmore Park Meadows, Inc. because that question is not in litigation in this cause. The opinion of June 29, 1967, will also be modified to provide that the officials of Elmore Park Meadows, Inc. shall be required to negotiate and deal either with the Town of Bartlett or the City of Memphis under the authority of T.C.A. Section 6-2608 regarding a source of water for Sections B and C of the subdivision.

The costs of the petition to rehear and clarify will be taxed against appellees Elmore Park Meadows, Inc. and Quinton Olds.

Avery, P. J. (W.S.), and Bejach, J., concur.